IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Judge John L. Kane

Civil Action No. **06-cv-611-JLK**

**NATHAN DUNLAP**,

     Petitioner,

v.

**ARI ZAVARAS, Executive Director, Colorado Department of Corrections,**

     Respondent.

---

## MEMORANDUM OPINION AND ORDER
## (BURGER KING)

---

**Kane, J.**

In 1993, a Burger King restaurant in Aurora, Colorado was robbed while the assistant

manager, a manager trainee and a crew member were on duty. The following month, Petitioner

Nathan Dunlap was arrested for an unrelated quadruple homicide at a nearby Chuck E. Cheese

restaurant.[1]  While in custody on the murder charges in the Chuck E. Cheese case, Dunlap was

charged with three counts of second degree kidnapping in violation of CRS § 18-3-302, three

counts of aggravated robbery in violation of CRS § 18-4-302, one count of theft in violation of

CRS § 18-4-401 and one count of violent crime in violation of CRS § 16-11-309 related to the

robbery of the Burger King.

In the Burger King case, which was tried before the Chuck E. Cheese case and is the

---

[1]  Dunlap has also filed a habeas corpus petition related to his conviction for first-degree
murder in that case, 1:08-cv-256-JLK.  Dunlap's conviction in the Burger King case was used as
a statutory aggravator to obtain a death sentence in the Chuck E. Cheese case.

subject of this opinion, a jury convicted Dunlap of two counts of second degree kidnapping, one count of aggravated robbery, one count of theft and one count of violent crime. The trial judge enhanced one second degree kidnapping count to a class two felony because the victim, the manager trainee, was also the victim of a robbery; the judge enhanced the other kidnapping count which concerned the crew member to a class three felony because a deadly weapon was used. Dunlap was sentenced to consecutive terms of twenty and thirty-five years for second degree kidnapping, twenty years for aggravated robbery and a concurrent six-year term for theft.

The Colorado Court of Appeals affirmed the conviction and sentence, *People v. Dunlap*, 96CA0329 (Colo. Ct. App. Feb. 5, 1998) (unpublished, attached as Appendix A), and the Colorado Supreme Court denied Dunlap's petition for *certiorari* review. *People v. Dunlap*, 98SC221 (Colo. Oct. 19, 1998).

Pursuant to Colorado Rule of Criminal Procedure 35(c), Dunlap filed an application for post-conviction relief in the state trial court. The trial judge granted his Rule 35(c) motion in part and denied it in part, reducing the kidnapping convictions from enhanced to unenhanced felonies. *People v. Dunlap*, 95CR605 (Dist. Ct. Arapahoe Cnty. May 1, 2001) (unpublished, attached as Appendix B). The parties cross-appealed the ruling to the Colorado Court of Appeals, which reversed the partial grant of post-conviction relief and affirmed the denial of Dunlap's remaining claims. *People v. Dunlap*, 124 P.3d 780 (Colo. Ct. App. 2004). The Colorado Supreme Court denied *certiorari*. *People v. Dunlap*, 05SC53 (Colo. Nov. 7, 2005).

Having exhausted available state remedies, Dunlap filed his initial Application for Writ of Habeas Corpus (Doc. 1) in the U.S. District Court on April 3, 2006. Respondent filed his initial Response (Doc. 24) on September 29, 2006. After Dunlap's state court post-conviction counsel

withdrew from representation, his current counsel filed a Combined Amended Petition for Writ of Habeas Corpus, Brief in Support and Traverse to Respondent's Answer to Original Petition (Doc. 44) on April 24, 2007, abandoning twenty-five of the original thirty-two claims for relief asserted in the original Petition. Respondent answered the Amended Petition on July 31, 2007 (Doc. 47) and Dunlap submitted his Reply Brief in Support of his Amended Petition (Doc. 48) on August 13, 2007. After a status conference and pursuant to my order, Respondent re-filed his Response to Dunlap's Amended Petition for Writ of Habeas Corpus (Doc. 8) on March 31, 2010.[2] Dunlap filed his Reply to Respondent's Re-filed Response (Doc. 85) on April 8, 2010. I have thoroughly considered all of the briefing on this matter, and find oral argument unnecessary. For the reasons stated below, Dunlap's Amended Petition for Habeas Corpus Relief is DENIED.

## Habeas Corpus Overview

Habeas corpus is deeply rooted in the traditions of English and American common law. As the English jurist, Mr. Justice Wilmot, acknowledged before our independence, "[the writ of habeas corpus is the] birthright of the people, subject to such provisions as the law has established for granting [it] . . . . Those provisions are not a check upon justice, but a wise and provident direction of it . . . ." *Opinion on the Writ of Habeas Corpus,* (1758) 97 Eng. Rep. 29, 33 (K.B.). The purpose of the "great writ" is to "insure the integrity of the process resulting in imprisonment." William F. Duker, A Constitutional History of Habeas Corpus 3 (1980). Although the nature and purpose of the writ is informed by the common law, federal courts are only empowered to exercise the writ to the extent authorized by Congress. *Ex Parte Bollman*, 8

---

[2] This case had been stayed pending the resolution of Dunlap's state court appeal of the legality of his sentence. Judge Arguello, to whom this case was previously assigned, lifted the stay after the Colorado Supreme Court denied *certiorari* on January 11, 2010.

U.S. 75, 93-94 (1807).

Initially, the writ was restricted to providing relief in federal courts for individuals held in federal custody. *See* Judiciary Act of 1789, ch. 20, 1 Stat. 73, 81 (1789). Congress, however, expanded the writ to provide relief "in all cases," state or federal, "where any person may be restrained of his or her liberty in violation of the Constitution, or any treaty or law of the United States." *See* Habeas Corpus Act of 1867, ch. 27, 14 Stat. 385 (1867) (codified as amended at 28 U.S.C. § 2254). Although at times the Supreme Court employed an expansive application of the writ, it has recently limited the scope of habeas review.[3] Most relevant to Dunlap's petition, Congress significantly curtailed the scope and function of habeas corpus review with the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub. L. No. 104-132, 110 Stat. 1214 (1996) (codified as amended at 28 U.S.C. § 2254). The judicial and statutory limitations on habeas corpus review are in three independent categories: findings of law, findings of fact and procedural bars. These standards are more fully discussed in the 1:08-cv-00256-JLK Memorandum Opinion and Order (Chuck E. Cheese) filed on even date herewith.

### *Claim I: Pretrial Publicity Was Both Presumptively and Actually Prejudicial*

As his first ground for post-conviction relief, Dunlap argues that pretrial publicity relating

---

[3] The Supreme Court broadened the scope of the writ with its decisions in *Fay v. Noia*, 372 U.S. 391 (1963) (finding that claims not raised in state courts could be raised on habeas corpus unless the petitioner deliberately bypassed state procedures) and *Brown v. Allen*, 344 U.S. 443 (1953) (allowing relitigation of all constitutional claims on habeas corpus), but has since limited it. *See, e.g.*, *McCleskey v. Zant*, 499 U.S. 469 (1991) (an individual who has previously filed a habeas corpus petition challenging a conviction may file a subsequent petition presenting a new issue only if he or she can show cause and prejudice from the earlier omission of the issue); *Teague v. Lane*, 489 U.S. 288 (1989); *Wainwright v. Sykes*, 433 U.S. 72 (1977) (claims not presented in state court may be raised on habeas corpus only if there is cause and prejudice); and *Stone v. Powell*, 428 U.S. 465 (1976) (Fourth Amendment exclusionary rule claims cannot be raised on habeas corpus if the state court provided a full and fair hearing).

to the Burger King case was both presumptively and actually prejudicial, and that by refusing to change venue, the trial judge deprived him of his right to due process and a fair trial by an impartial jury.

**Clearly Established Federal Law**

Although the United States Constitution entitles a criminal defendant to "a panel of impartial, 'indifferent' jurors," this does not mean that jurors must be completely ignorant of the facts and issues involved. *Murphy v. Florida*, 421 U.S. 794, 799-800 (1975) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). As the U.S. Supreme Court noted more than a century ago:

> [E]very case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits.

*Reynolds v. United States*, 98 U.S. 145, 155-56 (1879).

In light of this reality:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in the court.

*Irvin*, 366 U.S. at 723.

The responsibility for assessing a potential juror's impartiality lies with the trial judge, who conducts the voir dire to identify biased members of the venire. *Patton v. Yount*, 467 U.S. 1025, 1038 (1984). The trial judge must weigh the responses of each member of the venire and assess his or her credibility, usually relying upon unquantifiable observations of demeanor and body language. *Id.* As a result, the trial judge's resolution of such questions is entitled to "special deference," *id.*, and will be reversed only for "manifest error." *Id.* at 1031-32.

5

Special deference notwithstanding, it is possible for a defendant to establish that a trial judge abused his or her discretion by empaneling a partial jury and subsequently refusing to change venue. To do so, a defendant must show either that (1) pretrial publicity was so massive, pervasive and prejudicial that it created a presumption of a denial of a fair trial (*see Sheppard v. Maxwell*, 384 U.S. 333 (1966); *Estes v. Texas*, 381 U.S. 532 (1965); *Rideau v. Louisiana*, 373 U.S. 723 (1963)) or (2) pretrial publicity created actual prejudice against the defendant in the jury panel. *See Irvin*, 366 U.S. 717.

### 1. Presumed Prejudice

A presumption of prejudice may not be based solely upon "knowledge in the community of either the crimes or the putative criminal." *Dobbert v. Florida*, 432 U.S. 282, 303 (1977). To establish a presumption of prejudice, a defendant must show the existence of a "trial atmosphere . . . utterly corrupted by press coverage." *Murphy*, 421 U.S. at 798. The U.S. Supreme Court has found such an atmosphere where a defendant's confession was publicly broadcast three times in the community where the crime and trial took place, *Rideau*, 373 U.S. 723; where the press was allowed to sit within the bar of the courtroom and to overrun it with television equipment, *Estes*, 381 U.S. 532; and where a trial was infected not only by a background of extremely inflammatory publicity but also by a courthouse given over to accommodate the public appetite for carnival, *Sheppard*, 384 U.S. 333. "The proceedings in these cases were entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of a mob." *Murphy*, 421 U.S. at 799.

### 2. Actual Prejudice

Even if Dunlap is unable to establish a presumption of prejudice, he may successfully

challenge the trial judge's denial of his motion for change of venue by establishing that pretrial publicity created actual prejudice against him in the jury panel. In *Irvin v. Dowd*, the U.S. Supreme Court found actual prejudice where a defendant established such prejudice by overwhelming statistical evidence. 366 U.S. 717. The Court found significant the fact that 370 potential jurors (of a venire of 430) entertained some opinion as to the guilt of the accused on the charged offense. Despite the court's dismissal of 268 members of the venire who had formed fixed opinions as to guilt, eight of the twelve jurors ultimately empaneled thought the defendant was guilty. As the Court noted, "in the light of the circumstances here the finding of impartiality does not meet constitutional standards." *Id.* at 728.

Actual prejudice is, however, only inferred from voir dire in exceptional circumstances. In *Patton v. Yount*, the Court found no manifest error in refusing to change venue even though (1) pretrial publicity revealed inadmissible information such as defendant's confession and prior conviction for murder, (2) 77% of jurors admitted they had an opinion about defendant's guilt and (3) eight of the fourteen jurors and alternates who were seated had an opinion as to guilt. 467 U.S. 1025 (1984).

## Discussion

### 1. Presumed Prejudice

Dunlap argues that the Colorado Court of Appeals erroneously "relied on its finding that virtually all of the evidence Dunlap submitted in support of his motion related to the Chuck E. Cheese case, and demonstrated little public awareness of or opinion about the Burger King robbery" in denying his claim of presumptive prejudice. Am. Pet. (Doc. 44) at 17. Dunlap continues:

> This myopic reasoning was contrary to, and an unreasonable application of, the relevant clearly established Supreme Court jurisprudence, which does not require that the damaging pretrial publicity relate exclusively, or even primarily, to the specific charges at issue, but rather turns on the effect of the publicity on the defendant's ability to obtain a fair trial by an impartial jury.

*Id.* Dunlap cites a public opinion poll in evidence before the trial judge that revealed a high level of recognition of Dunlap's name in the community (72%), and a high level of association between him and the Chuck E. Cheese homicides (66%). Dunlap also cites evidence of pervasive media coverage presented to the trial judge relating to his arrest for the Chuck E. Cheese murders, the impact of the murders on the victims' families and friends, other arrests in the Chuck E. Cheese case and details about the crime and Dunlap's criminal history. Dunlap asserts that "[a]fter the Burger King case was filed, media reports frequently linked it to the Chuck E. Cheese case." *Id.* at 21. Perhaps most significant, Dunlap cites publicity revealing his offer to plead guilty in the Chuck E. Cheese case to avoid the death penalty and informing the public of the State's desire to obtain a death penalty aggravator by trying the Burger King case first.

Citing extensive press coverage and significant public exposure to his name, Dunlap argues the Court of Appeals' decision was contrary to clearly established federal law because it failed to consider whether publicity related to the Chuck E. Cheese crime prejudiced the Arapahoe County jury pool. Despite Dunlap's argument to the contrary, the Court of Appeals' denial of relief was not premised solely on a finding that the publicity related primarily to the Chuck E. Cheese case. The Court of Appeals considered all of the articles included in the record relating to Dunlap's motion to change venue and found they "[were] not inflammatory or sensational and [did] not 'demonize' the defendant." *People v. Dunlap*, 96CA0329, slip. op. at

5.

Dunlap fails to establish that the Court of Appeals' decision was an unreasonable application of clearly established federal law. Presumptive prejudice is not established by "knowledge in the community of either the crimes or the putative criminal." *Dobbert*, 432 U.S. at 303. Neither the polling data nor the pretrial publicity cited by Dunlap establish the trial court proceedings were "utterly corrupted by press coverage" or lacking in "solemnity and sobriety." Absent such a showing, Dunlap has failed to establish presumptive prejudice. *See Stafford v. Saffle*, 34 F.3d 1557, 1566 (10th Cir. 1994) (finding that pervasive pretrial publicity relating to defendant's prior conviction for killing six people during an armed robbery was not presumptively prejudicial because there was "nothing in the record to suggest that this publicity was anything other than factual reporting"); *United States v. Abello-Silva*, 948 F.2d 1168, 1177 (10th Cir. 1991) (finding no prejudicial publicity where press coverage consisted primarily of facts gathered from public records and pretrial hearings).

Contrary to Dunlap's argument, the evidence suggests the trial judge exercised firm control over the proceedings and set an exemplary tone of "responsible professionalism" throughout the entire case. This is a far cry from the "circus atmosphere" which characterized the proceedings in *Sheppard, Estes* and *Rideau*. Because the Colorado Court of Appeals correctly and reasonably applied controlling Supreme Court precedent, Dunlap is not entitled to habeas relief.

### 2. Actual Prejudice

Dunlap also argues, even if he were not entitled to a presumption of prejudice, "the record establishes both that the publicity actually prejudiced Dunlap, because his Arapahoe

County juror [sic] was unduly influenced by it, and that the state courts ruled contrary to and unreasonably applied controlling Supreme Court precedent in holding otherwise." Am. Pet. (Doc. 44) at 30. I disagree.

This case is readily distinguishable from the lone U.S. Supreme Court case finding actual prejudice. In *Irvin v. Dowd*, 90% of the venire believed the defendant guilty of the charged offense and 67% of the jurors actually seated had an opinion as to guilt. 366 U.S. at 727; *but see Patton v. Yount*, 467 U.S. at 1029 (finding no actual prejudice even though 77% of the venire expressed an opinion as to defendant's guilt and 57% of the empaneled jury entertained notions as to guilt); *Mu'Min v. Virginia*, 500 U.S. 415, 428 (1991) (distinguishing *Irvin* on the grounds that, although eight of twelve jurors had knowledge of the case, none had expressed any opinion as to guilt).

In recognition of the significant publicity relating to Dunlap in both the Chuck E. Cheese and Burger King cases, the trial judge enlarged the venire and conducted extensive *in camera* voir dire to determine whether it was possible to empanel an impartial jury. Of the 103 venire members, fifty-one were excused for cause.[4] Of those fifty-one, forty-three were excused based on their significant exposure to pretrial publicity about Dunlap, their admissions that they could not give him a fair trial or their expressed opinion as to his guilt in either the Chuck E. Cheese or Burger King cases. Of the fifty-two remaining jurors, forty-nine recognized Dunlap's name, thirty-nine connected him to the Chuck E. Cheese homicides and four (who were eventually

---

[4] Minor discrepancies exist between the statistics cited by Dunlap, the Respondent, and the trial judge. I use Dunlap's statistics.

excused) admitted they were convinced of his guilt in that case.[5]  Most of the jurors, however, expressed no opinion about Dunlap's guilt in the Burger King case.  Following the *in camera* voir dire, the trial judge seated a jury of sixteen, four of whom became alternates.  Of those sixteen, none had any preconceived notion of Dunlap's guilt in either the Chuck E. Cheese or Burger King cases, and all assured the trial judge they could be impartial and would not be influenced by pretrial prejudice.

Dunlap fails to establish that the Court of Appeals ruling is either contrary to, or an unreasonable application of, governing Supreme Court precedent.  Significantly, as in *Mu'Min v. Virginia* (and unlike *Irvin v. Dowd*), although the jury was familiar with Dunlap's name, no juror expressed an opinion as to his guilt in either the Burger King or Chuck E. Cheese cases.  *See also Stafford*, 34 F.3d at 1567 (finding no actual prejudice where, despite each jury member's knowledge of defendant's prior conviction, all seated jurors said they could be fair);  *Abello-Silva*, 948 F.2d at 1178 (finding no actual prejudice where the judge had secured the assurances of the jury that they would "decide impartially the case on the basis of what he or she heard in the courtroom, and not what he or she read in the paper or heard on TV").  Accordingly, the Court of Appeals' rejection of Dunlap's claim of actual prejudice conformed with clearly established federal law.

---

[5]  As the Colorado Court of Appeals noted, "according to defendant's statistics, 92% of the prospective jurors were familiar with defendant from media coverage. A total of 41% expressed an opinion that defendant was guilty of the Chuck E. Cheese homicides, and 14% felt that he was guilty of the robbery at issue here."  *People v. Dunlap*, No. 96CA0329 at 6, Doc. 44-3 at 8.

### *Claim 2: Trial Counsel Rendered Ineffective Assistance of Counsel*
### *by Failing to Impeach Tony Blan with Available Evidence*

As his next ground for post-conviction relief, Dunlap alleges his counsel's failure to impeach the credibility of Tony Blan, a key prosecution witness, constitutes ineffective assistance of counsel in violation of his Sixth Amendment right.

## Clearly Established Federal Law

As the U.S. Supreme Court has recognized, "[t]he right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." *Strickland v. Washington*, 466 U.S. 668, 685 (1984) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275 (1942)). The logical corollary of the right to counsel is the right to effective assistance of counsel. *Id.* at 686. Accordingly, a defendant may successfully challenge the constitutionality of his criminal conviction by showing that his counsel's assistance was ineffective.[6]

Dunlap first argues the Colorado Court of Appeals' denial of this claim "turned on an unreasonable determination of the facts, in light of the record, and ignored the reasonable likelihood that the omitted evidence would have undermined the jury's confidence in Blan's testimony, producing a different outcome for Dunlap." Am. Pet. (Doc. 44) at 33. Tony Blan was the assistant manager in charge of the Burger King the night of the robbery. At trial, Blan testified Dunlap had approached him to plan the Burger King robbery, but he initially refused to

---

[6] For a more detailed discussion of the standards for judging the effectiveness of counsel see, 1:08-cv-00256-JLK Memorandum Opinion and Order (Chuck E. Cheese) filed on even date herewith.

participate. Blan testified, however, that Dunlap had intimated that Dunlap was involved in or behind an attack on Blan's sister a few weeks before and he threatened to hurt Blan's sister if Blan did not help rob the Burger King.

To support the claim of ineffective assistance, Dunlap urges Blan's testimony provided a crucial piece of the prosecution's case against him, and argues that if his counsel had further impeached Blan with his sister's testimony that Dunlap was not the party who had assaulted her or with evidence of Blan's admitted theft from an employer three years before the Burger King incident, there is a reasonable probability the jury would have found him innocent.

## Discussion

### 1. Failure to Impeach Blan with His Sister's Testimony

In denying Dunlap's claim that his counsel's failure to impeach Blan with his sister's testimony constituted ineffective assistance of counsel, the Colorado Court of Appeals correctly found no impeachment material arose from this incident. This determination is a reasonable application of the facts in light of the record.

As a threshold matter, Dunlap does not allege that his counsel failed to use this evidence because he was unaware of it. To the contrary, the evidence establishes his counsel had investigated the sister's testimony and decided not to use it. As *Strickland* holds, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 460 U.S. at 690-91. Dunlap fails to rebut the "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* at 689.

Furthermore, Blan did not testify Dunlap had actually assaulted his sister, or even that

Dunlap was present at the assault. He testified only that Dunlap claimed to be involved in or behind the attack on Blan's sister. Even if Blan's sister had testified that Dunlap was not her attacker, it does not alter the fact that Blan could have reasonably believed Dunlap was in some way responsible for the attack. Because this testimony provided no impeachment evidence, the Court of Appeals quite reasonably determined Dunlap's counsel was not objectively unreasonable in not presenting this evidence at trial. *See Parker v. Scott*, 394 F.3d 1302, 1323 (10th Cir. 2005) (finding that counsel's decision not to use purported impeachment evidence was not ineffective assistance of counsel where the evidence was inadmissible or irrelevant).

### 2. Failure to Impeach Blan with Prior Admission of Employee Theft

Dunlap has created some confusion regarding the nature of the evidence relating to Blan's prior admission of employee theft. In both the state court proceedings and his initial Petition for Habeas Relief, Dunlap claimed his counsel erred in failing to introduce this evidence, but in his Amended Petition Dunlap asserts his counsel erred in failing to introduce evidence of Blan's <u>conviction</u> of a previous employee theft. Respondent asserts this change in terminology has very real consequences, arguing, "[B]ecause the amended claim that this evidence constituted evidence of a prior 'conviction' was not presented to state courts, and because the state courts would not permit its belated presentation now, it was procedurally defaulted." Resp't's Refiled Resp. to Am. Pet. (Doc. 84) at 110. Terminology aside, it is apparent the substance of this claim closely parallels the state court claims raised by Dunlap. This claim was fully exhausted in state courts, and it has not been procedurally defaulted.

At trial, Dunlap's counsel cross-examined Blan at length. He elicited admissions that Blan was in financial trouble at the time of the robbery and was not above stealing from his

employer when in such trouble. He also had Blan review the details of the series of false stories he had given police and implied that Blan implicated Dunlap in the robbery only after he realized the police suspected Blan himself.

In denying Dunlap's claim that his attorney rendered ineffective assistance in failing to impeach Blan with evidence of his prior admitted employee theft, the Colorado Court of Appeals found Dunlap failed to demonstrate a reasonable probability that the additional information would have caused a different outcome. In essence, the Court of Appeals found that, in light of the fact that Dunlap's counsel had forced Blan to admit he was not above stealing from his employer, evidence of a specific instance of employee theft was merely cumulative and had only a potentially marginal impact.[7] *See Horton v. Mayle*, 408 F.3d 570, 576-77 (9th Cir. 2005) (trial counsel was not ineffective in failing to impeach a witness with his prior felony convictions for drug offenses, where the witness's testimony revealed his extensive drug use, that he had some criminal history and that he was an admitted liar). Dunlap has not presented sufficient evidence to undermine the reasonableness of this determination. Accordingly, this claim provides no basis for habeas relief.

---

[7] As an additional ground for dismissing Dunlap's habeas claim on this issue, Respondent contends that evidence of Blan's admission of employee theft would be inadmissible. Although Respondent cites a case which seems to suggest that evidence of a prior theft is not probative of truthfulness and is therefore inadmissible under C.R.E. 608(b), *People v. Jones,* 971 P.2d 243, 244 (Colo. Ct. App. 1998), that case was overruled by the Colorado Supreme Court which explicitly held that "theft is probative of truthfulness or dishonesty." *People v. Segovia*, 196 P.3d 1126, 1131 (Colo. 2008). In reaching this conclusion, the Colorado Supreme Court conducted a fifty-state and federal survey, which revealed the law is not well-settled. *Id.* at 1131. In light of this uncertainty, and the fact that both *Jones* and *Segovia* post-date the state proceedings at issue here, the admissibility of this evidence at the time of Dunlap's trial and appeals cannot be determined with any degree of confidence.

***Claims 3 and 4: The Prosecution Deprived Dunlap of Due Process
by Using an Improper "Golden Rule Argument" and Vouching for Witnesses;
Counsel Rendered Ineffective Assistance by Failing to Object***

As his next ground for relief, Dunlap argues the prosecution, in its closing argument, deprived him of due process and a fair trial by exhorting the jury to place itself in the victim's position and by vouching for witnesses. Dunlap also argues that his counsel's failure to object to the prosecution's improper closing argument constitutes ineffective assistance of counsel.

## Clearly Established Federal Law

In representing a sovereign government, the prosecution's interest "is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). Accordingly, the prosecutor "may strike hard blows, [but] he is not at liberty to strike foul ones." *Id.* Thus, a prosecutor may not vouch for the credibility of a witness or divert the jury from its duty to decide the case on the evidence. *United States v. Young*, 470 U.S. 1, 8 (1985) (quoting the ABA Standards for Criminal Justice).

Not all foul blows, however, are sufficient grounds for post-conviction relief. "[I]nappropriate prosecutorial comments, standing alone, [do] not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *Young*, 470 U.S. at 11. In assessing the effect of a prosecutor's misconduct upon the fairness of the trial, "the statements or conduct must be viewed in context." *Id.*; *see also Berger*, 295 U.S. at 89 (noting that the underlying strength of the prosecution's case and the nature of the misconduct are relevant to determining prejudice). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly*, 416 U.S. 637).

Dunlap argues the prosecution committed misconduct during closing argument, both by telling the jurors to imagine themselves in one of the victims' circumstances, and by vouching for multiple government witnesses. In finding the prosecutor's argument did not deprive him of due process and a fair trial, Dunlap asserts the Court of Appeals ruled contrary to, and unreasonably applied, clearly established federal law.

## Discussion

### 1. Golden Rule Argument

In his closing argument, the prosecutor asked the jury, "Would you want to be moved, particularly in the way Christine was, with a gun touching your right temple? Do you think you would feel that your risk of harm was being substantially increased?"[8] Vol. XLV at 29.[9] Because defense counsel failed to object to this statement, the Colorado Court of Appeals reviewed for plain error.[10] Although it found this statement constituted an improper "golden rule" argument,[11] the court determined it did not rise to the level of plain error because it was "made in the context of arguing that the elements of kidnapping were satisfied, was isolated, and was not part of a greater discussion of the manager trainee." *People v. Dunlap*, 124 P.3d at 809. Dunlap argues the Court of Appeals considered only the fact that the prosecutor's improper statement was made

---

[8] Christine Contreras was the manager trainee.

[9] All citations to the record in this case follow the format agreed to by the parties.

[10] To show plain error, Dunlap must demonstrate that the improper remarks so infected the trial with fundamental unfairness that his conviction offends due process. *See Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986).

[11] A golden rule argument alludes to the biblical injunction, "Do unto others as you would have others do unto you." It is improper because it supplants the law, given to the jury to judge fairly and impartially, with subjective rather than objective criteria.

just once and ignored the role it played in influencing the jury. According to Dunlap, because this statement constituted the only evidence in support of a key element of the offense of kidnapping – movement of the victim which substantially increased the risk of harm to her – it constitutes plain error.

Dunlap's argument is, however, belied by the record. The prosecutor's statement was not the only evidence of this element, and the Colorado Court of Appeals did not fail to consider the impact of the statement upon the jury. As the Court of Appeals noted:

> Here, the evidence showed that the manager trainee was moved at gunpoint from the restroom to the kitchen, where both she and the crew member were forced to lie on the floor. The perpetrator then moved them both into a freezer with no telephone, no windows, and no escape route. This evidence was sufficient for a jury to find a substantial increase in the risk of the victims' harm.

124 P. 3d at 820. Because the prosecutor's golden rule argument was not the only evidence in support of the element of increasing the risk of harm, the Court of Appeals reasonably concluded that it did not rise to the level of plain error.[12]

## 2. Improper Vouching

In his Amended Petition, Dunlap argues the prosecutor improperly vouched for the

---

[12] The trial judge also erroneously instructed the jury that the element of asportation required a showing of an increase in the risk of harm. As the Colorado Supreme Court held in *People v. Harlan*:

> We have consistently held that the asportation element of second degree kidnapping is that the defendant moved the victim from one place to another. In no prior decision have we said that asportation must include substantially increasing the risk of harm to the victim, and we decline to do so in this case.

8 P.3d 448, 476-77 (2000). Because this increased risk of harm was not a required element of the offense, any argument relating to it could not have constituted plain error. Although Dunlap argues application of this precedent poses *ex post facto* issues, the Colorado Supreme Court did not announce a new rule in *Harlan*. It merely reaffirmed its prior decisions.

prosecution's three key lay witnesses (Blan, Wilson and Lechman),[13] as well as the prosecution's law enforcement witnesses (Deputy District Attorney Lee, Detective Petrucelli and Investigator Meskis).  Dunlap specifically objects to the prosecutor's statement calling into question the ability of the lay witnesses "to put together such a diabolical, complicated scheme" as would be required to conspire to lie and implicate Dunlap in the crime.  He also objects to the prosecutor's statement questioning the law enforcement witnesses' motivation to lie and implicate an "innocent man" and his description of Meskis and Petrucelli as "very professional and very experienced."

As a threshold matter, Dunlap failed to allege vouching with respect to either Wilson, Lechman or Lee in the state court proceedings.  Respondent urges that this claim has been procedurally defaulted.  Nonetheless, Dunlap contends that he may present additional facts in support of his claims so long as he "has presented the substance of his claim to the state courts." *Vasquez v. Hillary*, 474 U.S. 254, 258 (1986).

In *Vasquez*, the reviewing court admitted additional facts which "added nothing to the case that this Court has not considered . . . ."  *Id.* at 259.  In the instant case, Dunlap specified the grounds for his challenge and completely failed to reference any vouching for Wilson or Lechman.  He did, however, challenge the prosecutor's statement questioning the motivation of "the police or the District Attorneys" to lie and implicate an "innocent man."  Thus, for purposes of this proceeding, Dunlap's claims relating to improper vouching for Wilson or Lechman are procedurally barred because he failed to raise them in state court.  *See* 28 U.S.C. § 2254(b)(1).

---

[13]  Blan was the assistant manager who participated in the robbery.  Wilson was Dunlap's friend.  Lechman was Dunlap's girlfriend.

His claim against Lee,[14] however, is proper because it was implicit in his challenge in the state court proceedings.

Having determined that Dunlap may challenge the prosecutor's alleged vouching for Blan, Meskis, Petrucelli and Lee, I now turn to the merits of Dunlap's argument. In his state court briefs Dunlap challenged these statements:

> "But Detective Petrucelli. I submit there is a very experienced, very professional homicide detective, he knows when somebody is lying to him and they tell him the truth." (Improper vouching of Petrucelli and Blan)

> "But Investigator Meskis is a very professional, very experienced investigator and peace officer and she knows when a lead needs to be followed up on ..." (Improper vouching for Meskis and Blan)

> "Next problem in that theory is why would the police or the District Attorneys intentionally or negligently violate their oaths of office to uphold the law and instead either allow or cause the law to be broken by presenting perjured testimony, false evidence to convict an innocent man? Why in the world would they do that." (Improper vouching for Petrucelli, Meskis and Lee)

The Colorado Court of Appeals found the challenged statements were not improper at all, because they were fair responses to defense theories. To the extent that any of the statements were improper vouching, the Court of Appeals found they were not prejudicial and did not affect the fundamental fairness of the trial. In truth, none of the statements amount to vouching. Vouching requires some element of personal assurance in which the lawyer implicates his own percipience or belief rather than that of a witness. The gravamen of vouching is the attempt to have the jury accept as fact what the lawyer relates as opinion. It is to be distinguished from fair comment on the evidence or the opponent's argument.

To warrant habeas corpus relief, the prosecutor's alleged vouching must "so infect[] the

---

[14]  Lee was a Chief Deputy District Attorney who interviewed Blan in preparation for Dunlap's preliminary hearing.

trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477

U.S. at 181. These alleged improprieties must be judged in the context of the trial as a whole.

Significantly, the defense aggressively attacked the credibility and integrity of Blan, the police

and the other prosecution witnesses at trial. This included assertions that Blan had falsely

implicated Dunlap because he feared that police would implicate him in the robbery and that

Meskis, Petrucelli and Lee had "unprofessionally" pressured Blan to implicate Dunlap.[15] In light

of these arguments, and the presentation of significant evidence supporting the prosecutor's

statements that the investigators were experienced and had conducted the investigation

professionally, the Court of Appeals' decision is not contrary to, or an unreasonable application

of, clearly established federal law. *See Patton v. Mullin*, 425 F.3d 788, 813 (10th Cir. 2005)

(finding no improper vouching where the prosecutor's statements were based on evidence in the

record and were not an expression of the prosecutor's personal beliefs).

### 3. Ineffective Assistance of Counsel

Dunlap next argues the Colorado Court of Appeals' rejection of his claim that his counsel

rendered ineffective assistance in failing to object to the prosecutor's closing argument is

contrary to, and an unreasonable application, of *Strickland*. Had his counsel objected to the

golden rule argument, Dunlap argues, the prosecutor's errors would have been reviewed under

the "harmless beyond a reasonable doubt" standard instead of the "plain error" standard.[16]

---

[15] Precisely what "unprofessionally" means is left to speculation.

[16] Under the harmless error standard, a reviewing court "will reverse a resulting
conviction only if the court's error was not harmless – that is, if it had a substantial influence on
the outcome or leaves one in grave doubt as to whether it had such effect." *United States v.
Roach*, 582 F.3d 1192, 1207 (10th Cir. 2010) (internal quotation and citations omitted). The
government bears the burden of proving the error was harmless. In contrast, under the plain
error standard, the defendant/petitioner bears the burden of proving the improper remarks so

Although Dunlap correctly asserts this very real consequence, I find no support for his view that the Court of Appeals would have reached a different conclusion had it applied the "harmless beyond a reasonable doubt" standard. The Court of Appeals rejected this claim, concluding that Dunlap failed to allege or demonstrate prejudice.[17] As noted above, significant evidence was presented in addition to the golden rule argument supporting the asportation element of kidnapping. Regardless of which party bore the burden of proof or which standard it would have applied, the Court of Appeals reasonably determined the golden rule argument was not prejudicial.

Dunlap also alleges that his counsel rendered ineffective assistance in failing to object to the prosecutor's allegedly improper vouching. As noted above, the Court of Appeals found no impropriety in the prosecutor's statements, and it disposed of Dunlap's argument on the ground of lack of sufficient prejudice. Finding no infirmity in the Court of Appeals' determination that these statements were not improper, I conclude its dismissal of the related ineffective assistance of counsel claim was a consistent and reasonable application of established federal law. *See United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993 ) ("Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the

---

infected the trial with fundamental unfairness that the conviction offends due process. *See Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986).

[17] Dunlap argues that in taking this approach, "the court implicitly recognized that there was no strategically defensible reason for counsel not to object to the prosecutor's blatantly improper argument, and that Dunlap had, at least, satisfied *Strickland's* performance prong." This argument is, however, directly contradicted by *Strickland* itself, which allows reviewing courts to reject claims of ineffective counsel on either the performance or prejudice prongs. The Court of Appeals' focus on prejudice does not implicitly recognize anything.

'wide range' of permissible professional legal conduct.").

### Claim 5: Trial Judge's *Ex Parte* *Communication with Jury, Denying*<br>*Request for Testimony of Three Witnesses, Violated Dunlap's*<br>*Right to Counsel and Right to be Present at All Critical Stages of the Trial*

Dunlap next claims the trial judge's *ex parte* communication with the jury, denying a request for the testimony of three prosecution witnesses, violates his right to counsel and his right to be present at all critical stages of the trial.

### Clearly Established Federal Law

A criminal defendant has a fundamental right to be present at all critical stages of the trial. *United States v. Gagnon*, 470 U.S. 522, 526 (1985). This right is grounded primarily in the Confrontation Clause of the Sixth Amendment, but it is also protected by the Due Process Clause of the Fifth Amendment "in some situations where the defendant is not actually confronting witnesses or evidence against him." *Id.* In addition, the Sixth Amendment right to counsel guarantees a right "to counsel's presence at trial," as well as at other critical stages of criminal proceedings. *United States v. Wade*, 388 U.S. 218, 226 (1967).

"Any *ex parte* meeting or communication between the judge and the foreman of a deliberating jury is pregnant with possibilities for error." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 460 (1978). "The mere occurrence of an *ex parte* conversation between a trial judge and a juror," however, "does not constitute a deprivation of any constitutional right." *Gagnon*, 470 U.S. at 526. "The defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication." *Id.* (citing *Rushen v. Spain*, 464 U.S. 114, 125-26 (1983) (Stevens, J., concurring)). As the U.S. Supreme Court noted in *Snyder v. Massachusetts*, "whenever [a

defendant's] presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge . . . [the] presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." 291 U.S. 97, 105-08 (1934). Violations of the rights to be present and to counsel during all critical stages of the proceedings are subject to harmless error analysis. *Rushen*, 464 U.S. at 119 n. 2.

Dunlap asserts the trial judge deprived him of his right to counsel and his right to be present at trial through an *ex parte denial* of the jury's request for the testimony of three prosecution witnesses. He claims the Colorado Court of Appeals' ruling to the contrary was predicated on an unreasonable determination of the facts in light of the record and contrary to, and an unreasonable application of, the U.S. Supreme Court's harmless error jurisprudence.

### Discussion

In response to a note from the jury requesting the testimony of Wilson, Blan and Lechman, the trial judge (without consulting counsel or making a record) answered, "You have received and have available all the materials which you may properly consider to reach a verdict." Vol. I at 339. The Colorado Court of Appeals found the *ex parte* aspect of this communication to be improper.[18] Nonetheless, because it found that the trial judge's response was substantively proper and that there was other testimony relating to the defendant's identity, the court held this error harmless beyond a reasonable doubt.

---

[18] Respondent argues there is no clearly established federal law holding that the formulation or delivery of a supplemental jury instruction during deliberations is a critical stage requiring the defendant's presence or implicating his right to counsel. Because I find proper the Court of Appeals' determination that any error was harmless beyond a reasonable doubt, I do not reach this argument.

In arguing that the Court of Appeals' decision was predicated on an unreasonable determination of the facts in light of the record, Dunlap relies heavily on the court's statement that "the testimony requested dealt in part with defendant's statements about taking credit for the robbery, [and] other witnesses testified to defendant's identity." *Dunlap*, 124 P.3d at 817. Even assuming, *arguendo*, that this statement is incorrect and was an unreasonable factual determination in light of the record, there are adequate and independent grounds for the Court of Appeals' holding, because it found the trial judge's response was substantively correct. *Cf. Saiz v. Ortiz*, 392 F.3d 1166, 1184-85, n. 13 (10th Cir. 2004) (finding the district court's decision upholding the state court's harmless error determination, even though it disagreed with two of the state court's four conclusions, was proper because the correct standard in reviewing a state's harmless error determination is whether it is "objectively unreasonable").

Dunlap fails to cite any clearly established federal law addressing a trial court's decision to provide (or not provide) transcripts to a jury.[19] As Respondent notes, "[t]he determination of harmlessness ultimately rests on the point of law that there is no obligation to provide a deliberating jury with transcripts of testimony and no error in telling a deliberating jury that it must rely on the evidence it has heard." Because the trial judge's response to the jury's request for transcripts of witness testimony was well within his discretion, the Court of Appeals' determination that the trial judge's response was substantively correct, and therefore not prejudicial, is not objectively unreasonable. *See, e.g.*, *United States v. Anwar*, 428 F.3d 1102,

---

[19] In light of the realities of court reporting, it is highly unlikely that any court would find a trial judge's decision not to provide requested transcripts unreasonable. A reporter's rough transcript is subject to inspection, correction and objection by both parties and the reporter. This process can be lengthy and time-consuming. If a judge were required to allow inspection of the transcripts, the jury process could be significantly frustrated and delayed.

1114-15 (8th Cir. 2005), *cert. denied*, 547 U.S. 1072 (2000) (finding a judge's *ex parte* response

denying a jury's request for transcripts to be harmless error, because "the decision to read

testimony requested by the jury rests within the sound discretion of the trial judge").

Accordingly, its determination that any violation of either of these constitutional rights was

harmless error was consistent with clearly established federal law.[20]

### Claims 6 and 7: Trial Judge's Responses to Jury's Questions Expressing Deadlock and Requesting Clarification About Evidence and Burden of Proof Deprived Dunlap of Due Process and a Fair Trial; Trial Counsel Rendered Ineffective Assistance by Failing to Object

Finally, Dunlap alleges the trial judge's responses to the jury's questions expressing its

deadlock and requesting clarification about the evidence and the burden of proof deprived him of

due process and a fair trial. Dunlap further alleges his trial counsel rendered ineffective

assistance by failing to object to the trial judge's responses to the jury's questions, particularly

by failing to propose a response that would correct the jury's improper understanding of the

burden of proof.

### Clearly Established Federal Law

"[T]he Due Process Clause protects the accused against conviction except upon proof

beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

---

[20] Dunlap also argues the Colorado Court of Appeals erroneously allocated the burden of establishing that the trial judge's error was harmless beyond a reasonable doubt. As Dunlap notes, the Court of Appeals stated, "Defendant argues that this testimony was 'critical' and 'central to the case,' but does not show how he was prejudiced." *Dunlap*, 124 P.3d at 817. The Court of Appeals, however, also noted, "In cases of trial error involving the right to counsel, reversal is required unless the appellate court can declare a belief that the error was harmless beyond a reasonable doubt." *Id.* at 816. This isolated statement is insufficient evidence to establish that the Court of Appeals wrongfully allocated the burden in reaching its decision. The plain meaning of the statement is that the Court of Appeals is not required to guess what Dunlap was arguing.

charged." *In re Winship*, 397 U.S. 358, 364 (1970).  The U.S. Constitution, however, "neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994).  As long as the trial judge instructs the jury that the defendant's guilt must be proven beyond a reasonable doubt, "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Id.*

In assessing the validity of a challenged instruction, "the proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it." *Id.* at 6 (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)).  Although a jury's understanding of its instructions may be cast into doubt by questions seeking to clarify the burden of proof, "a jury is presumed to follow its instructions . . . and understand a judge's answer to its question."  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987) and *Armstrong v. Toler*, 24 U.S. 258, 279 (1826)).  Accordingly, a trial judge fulfills his or her constitutional duty when he or she "respond[s] to [a] jury's question by directing its attention to [a] precise paragraph of [a] constitutionally adequate instruction that answers its inquiry."  *Cf. Weeks*, 528 U.S. at 234.

### Discussion

### *1. The Response*

Dunlap argues the trial judge's responses to a jury note requesting clarification as to the allocation of burden of proof and the definition of evidence and indicating its deadlock deprived him of due process and a fair trial.  He asserts the Colorado Court of Appeals, in finding the trial judge's responses proper, ruled contrary to, and unreasonably applied, clearly established U.S. Supreme Court precedent.

During deliberations, the jury submitted the following note to the judge:

The jury is at an impasse, with no movement from individuals' positions occurring over the past 2 hours.

We believe that a clarification of

1) what constitutes evidence (beyond instruction #4)
2) what is required to achieve "reasonable doubt"
3) what is the proper approach to try to resolve the impasse

Vol. I at 336 [sic]. With the agreement of counsel, the court answered:

1. "Evidence" is defined in Instruction No. 6. Also, please recall Instruction Number 20.
2. "Reasonable Doubt" is defined in Instruction Number 4.[21]
3. Having had a period of rest, please resume your deliberations.

*Id.* at 336-37. The Court of Appeals determined this response was proper because it was not

coercive and referred the jury to substantively correct instructions.[22] Dunlap argues that the

---

[21] Instruction 4 reads in pertinent part:

Every person charged with a crime is presumed innocent. This presumption of innocence remains with the defendant throughout the trial and should be given effect by you unless, after considering all the evidence, you are then convinced that the defendant is guilty beyond a reasonable doubt.

The burden of proof is upon the prosecution to prove to the satisfaction of the jury beyond a reasonable doubt the existence of all of the elements necessary to constitute the crime charged.

Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all the evidence, or lack of evidence, in this case . . ..

If you find from the evidence that the People have failed to prove any one or more of the elements of any count beyond a reasonable doubt, you will find the defendant not guilty as to that count.

Vol. I at 317.

[22] Respondent argues that the Colorado Court of Appeals' decision rested upon an adequate and independent procedural ground, and this claim is procedurally barred. As the Court of Appeals acknowledged, because defense counsel had agreed to the response, the

jury's note reflects significant confusion and misunderstanding, requiring a specific response

beyond the jury instructions. Specifically, Dunlap asserts that the jury's question asking what

was necessary to "achieve" reasonable doubt reflects the jury's confusion about the allocation of

the burden of proof,[23] and that the trial judge was required to do more than simply refer the jury

back to the original instructions. *See Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946)

(finding that when a question reveals a jury's confusion about a particular issue, the trial judge

must "clear [the confusion] away with concrete accuracy"). Despite Dunlap's contrary

argument, the jury's note did not reflect such confusion as would render the trial judge's

response improper. *Cf. United States v. Duran*, 133 F.3d 1324, 1334-35 (10th Cir. 1998)

(finding a judge's response improper where the jury evidenced its confusion by repeatedly

questioning the judge as to the meaning of a key term). In any event, Dunlap has failed to

demonstrate that the Court of Appeals' finding was either contrary to, or an unreasonable

application of, clearly established federal law.

### 2. Ineffective Assistance

Dunlap also argues that his counsel rendered ineffective assistance in failing to object to

the judge's answer to the jury's question. Because the judge's answer was substantively proper,

the Court of Appeals found counsel's failure to object to correct instructions was neither

---

defense had "waive[d] any right to assert error on appeal unless the response is so 'patently wrong' as to constitute a 'misstatement of the law.'" *Dunlap*, 124 P.3d at 817. Respondent urges that, under current law, the judge's response in such a situation is not even reviewable for a "misstatement of the law." Despite this argument, the Court of Appeals did in fact consider the merits of this claim. Accordingly, it is not procedurally barred from review in this court.

[23] Dunlap also argues that the jury's question regarding evidence and asking for instruction beyond instruction 4, further reveals the jury's confusion. This argument is tenuous at best. The jury's questions were independently numbered, and the question relating to the burden of proof contained no such request.

deficient performance nor prejudicial to the defendant.  Dunlap asserts the jury's question evidenced "a clear misunderstanding" of the burden of proof and that his counsel should have urged the trial judge to address the jury's obvious confusion as to the allocation of the burden of proof more carefully and accurately.  The question evidences no such thing.  "Achieving doubt" reflects a process of reasoning no matter who has the burden of proof.  The jury was simply asking what steps in reasoning it should take to decide the issue.  I do not find counsel's failure to object to a substantively correct response objectively unreasonable.[24]  *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2nd Cir. 2001).  In this case, the decision of the Colorado Court of Appeals is neither contrary to, nor an unreasonable application of, clearly established federal law.

### *Conclusion*

Because Dunlap has  raised no viable basis for granting a writ of habeas corpus, his Amended Petition is DENIED.

Dated:  August 24, 2010

**s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE

---

[24] The citation to *Anders* and its recognition of the duty to pursue non-frivolous issues on appeal is instructive, though not for the reason cited by Dunlap.  The logical corollary to this duty is that defense counsel need not pursue frivolous issues on appeal (or at trial).  Objection to a substantively correct instruction would, almost by definition, be frivolous.